Syllabus.

# Wytheville.

## CARR v. COMMONWEALTH.

### June 11, 1925.

### Argued before Judge Chichester took his seat.

1. APPEAL AND ERROR—*Questions for Jury—Credibility of Witnesses—Conflicts in Evidence.*—The credibility of the witnesses and the conflicts in the evidence are questions peculiarly for the jury.

2. INTOXICATING LIQUORS—*Possession of a Still, Appliances, etc.—Unlawful Possession of Liquor—Evidence Sufficient to Support Conviction—Foot Print.*—In the instant case two indictments were found against accused, in one of which he was charged with the unlawful possession of a still, appliances, etc., and in the second, of possession of a still, etc., and also with the unlawful possession of two and one-half gallons of ardent spirits. By agreement, the indictments were tried together, and the jury found a verdict of guilty in each case. It appeared from the evidence that a prohibition officer found a still buried insaw dust on the land of accused, and also sixteen fifty-gallon barrels of mash, a few feet from the still site was a track of a man and accused's foot fitted this track. A search the next day revealed another still, and a week later, another search revealed two gallons of ardent spirits and three barrels of mash hidden on accused's premises. There was other incriminating evidence produced by the Commonwealth. Accused denied all knowledge of the whiskey found and of the still and mash, and testified that he never made or sold whiskey.

   *Held:* That in the light of the evidence it could not be said that the verdict was contrary to the evidence, or without evidence to support it.

3. APPEAL AND ERROR—*Instructions—Amendment of Defendant's Instructions by Court—Instructions Fully Presenting Accused's Theory of the Case.*—Where it appeared, when all instructions given by the court were read together, that the jury was fully and sufficiently instructed upon the law applicable to defendant's theory of the case, amendments made to the instructions which were offered by defendant could not have been prejudicial to his rights.

Error to a judgment of the Circuit Court of Louisa county.

*Affirmed.*

The opinion states the case.

*Gordon & Gordon*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General*, and *Lewis H. Machen, Assistant Attorney-General*, for the Commonwealth.

WEST, J., delivered the opinion of the court.

Two indictments were found against the accused charging violations of the prohibition law. The first indictment charged that the accused unlawfully had in his possession a still, certain still appliances and mash capable of being used in the manufacture of ardent spirits. The second indictment contained two counts. The first charged that the accused unlawfully had in his possession a still, certain still appliances and mash capable of being used in the manufacture of ardent spirits; and the second count charged the unlawful possession of two and one-half gallons of ardent spirits. By agreement of parties the two indictments were tried together and the jury returned a verdict of guilty and fixed the punishment of the accused in each case at a fine of $50.00 and thirty days in jail.

To the judgments entered upon these verdicts this writ of error was allowed.

The accused assigns as error the action of the court in refusing to set aside the verdict as contrary to and not sustained by the evidence.

From the evidence tending to support the verdicts the following facts appear: On December 1, 1923, a

prohibition officer, who had been informed that there was a still on the farm of the accused, went in search of it. There was an old sawmill site located by the side of a mill pond on accused's land. The mill had been moved, leaving a large pile of sawdust and a pile of slab wood. The still site was located on the edge of the sawdust pile, and had been covered with sawdust. The still was found buried in the sawdust. In digging it out he also found sixteen fifty-gallon barrels of mash which were covered by the sawdust. A few feet from the still site was the track of a man who wore a No. 10 shoe. A truck track found a short distance from the sawdust pile was followed to the home of the accused where it was loaded with slab wood which came from the mill site. The officer left without seeing the accused but returned the next day to make a further search, and up the hill about sixty yards from the sawdust pile, in a gully, he found a 150-gallon copper still, and near by, hidden in a brush pile, the still worm, and further on a still cap. He took the accused to the scene, who admitted that the location of the still cap and worm were on his land. Accused had on a pair of Texas Steer brogan shoes and when requested to put his foot in the track he started to spoil the track by putting the wrong foot in it. The officer then took him by the ankle and placed his right shoe in the track and it was a perfect fit.

The mill site was located about 500 yards, air line, from the home of the accused and the wagon road which leads from his home to the mill site is one-half mile long. While the sawdust pile is not visible from the home of the accused, either smoke in the daytime or fire at the sawmill site at night would have been visible at his home.

One week later the officer received information that other mash had been found on the accused's land, and

on Saturday night, December 8, 1925, armed with a search warrant, he went to search his buildings and premises, arriving there about 2:00 a. m. on December 9th.    On a ditch or creek, on Carr's land, 350 yards from his residence, he found two gallons of ardent spirits hidden in honeysuckle, and three barrels of mash containing about 175 gallons; he also found a zinc barrel hidden in a ditch near the mash and a still site, where stones had been placed and fire built between them, for the purpose of heating the barrel, which was used as a still.

This still site was in plain view of Carr's stables, and there was a well used path leading from the site in the direction of his stables.    The mash, liquor, barrel and still were on the same side of the creek as Carr's house, and there was a forest on the opposite side of the creek from where the mash and other articles were found. When the officer met the accused and told him what he had found by the creek, the accused asked the officer if he had not received a note from him; and when informed that he had not, stated that he had written the officer a note on Saturday telling him he had found some mash on his place.    The officer received a note from Carr the following Monday which had been dropped in his mail box, not enclosed in an envelope, and which read as follows: "Mr. Vaughan, I found some mash on my place, please come up early Sunday morning, signed, John Carr."

The officer's son testified that two colored men placed the note in his father's mail box on Monday, December 1, 1923, between ten and twelve o'clock, and that he took it from the mail box soon thereafter.

The accused, testifying in his own behalf, stated that he had not been to the sawmill site in twelve months; that the load of slab wood was hauled therefrom to his

house by his daughters; that the track at the mill site was not his track; that he gave the note in an envelope to a colored man Saturday afternoon to take to officer Vaughan; that the fire was made among the stones, mentioned by the officer, by his family to heat water for the purpose of washing clothes; that he never made any whiskey or had any whiskey for sale; and that he knew nothing of the whiskey or the still until they were pointed out to him by the officer.

Three or four witnesses testified that the accused bore a good reputation as a law abiding citizen, and that they had never before heard of his being suspected of violating the prohibition laws.

[1, 2] The jury and trial judge both heard the witnesses testify and observed their demeanor on the witness stand.    The credibility of the witnesses and the conflicts in the evidence were questions peculiarly for the jury.    They have found the accused guilty and the trial judge has put the stamp of his approval upon their verdicts.    Under these circumstances, and in the light of the evidence, we cannot say that either verdict is contrary to the evidence or without evidence to support it. *Gilreath* v. *Commonwealth*, 136 Va. 709, 118 S. E. 100; *Dickenson* v. *Commonwealth*, 139 Va. 565, 123 S. E. 332; *Neal* v. *Commonwealth*, 134 Va. 567, 113 S. E. 646.

The remaining assignment of error is tô the action of the court in giving instructions Nos 1 and 2 at the instance of the Commonwealth and in modifying instructions 1, 2, 3, and 4 offered by the accused.

Instruction No. 1 reads as follows: "The court instructs the jury that by consent of the Commonwealth and of the accused they are trying the accused under both of the indictments marked, respectively, 'indictment No. 1' and 'indictment No. 2,' and they are instructed that they should bring in a separate verdict

upon each of said indictments; and if they believe from the evidence beyond a reasonable doubt that the accused, on the 2nd day of December, 1923, unlawfully had in his possession a still, or mash capable of being used in the manufacture of ardent spirits, they will find him guilty under indictment No. 1 and fix his punishment at a fine of not less than fifty dollars nor more than five hundred dollars and confinement in jail for not less than one month nor more than six months; and the jury are further instructed that if they believe from the evidence beyond a reasonable doubt that on the 9th day of December, 1923, the accused unlawfully had in his possession a still, or mash capable of being used in the·manufacture of ardent spirits, or unlawfully had in his possession two gallons of ardent spirits, they will find him guilty under indictment No. 2 and fix his punishment at a fine of not less than fifty dollars nor more than five hundred dollars and confinement in jail for not less than one month nor more than six months.''

We find no merit in the contention that there is no evidence to support this instruction.   The evidence was not only ample to support the instruction, but, as already shown, sufficient to warrant the jury in returning a verdict of guilty in each case.

Instruction No. 2 is substantially the same as an instruction on reasonable doubt which was approved by this court in *Horton* v. *Commonwealth*, 99 Va. 855, 38 S. E. 184, and need not be considered further.

[3] The instructions offered by the defendant, as amended and given by the court, are as follows:

No. 1. ''The court instructs the jury that the burden is on the Commonwealth to prove beyond a reasonable doubt that the kettle or still found on defendant's farm was in his possession, and if the evidence fails to show, or prove beyond a reasonable doubt that he knew that

the said still was on the place, then you will find for the defendant as to said still.

No. 2. "The court further instructs the jury that the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant knowingly had in his possession two and one-half gallons of ardent spirits, and unless the evidence proves beyond all reasonable doubt that he knew this liquor was upon his place and that it was in his possession you will acquit him.

No. 3. "The court further instructs the jury that the defendant cannot be legally convicted upon a presumption if any arising from the facts that these articles were found upon his land, but the evidence must go further and prove that he had knowledge of their being there and if it fails to do this you should acquit the defendant.

No. 4. "The court further instructs the jury that the finding of the still and whiskey as charged in one of the indictments and the finding of the mash, still and its appurtenances as charged in the other raises no presumption of law that any of this property was knowingly possessed by the defendant, and unless you believe from the evidence beyond a reasonable doubt that he had this knowledge, you should acquit him."

The amendments made to the instructions as offered did not prejudice the rights of the accused, since it plainly appears, when all the instructions given by the court are read together, that the jury was fully and sufficiently instructed upon the law applicable to his theory of the case.

This assignment is likewise without merit.

The judgments complained of are without error.

*Affirmed.*