**Alexandria**

ALAN DOUGLAS FULLER

v.

COMMONWEALTH OF VIRGINIA

No. 1107-90-4

Decided April 7, 1992

Counsel

Clarence F. Stanback, Jr., for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General; Richard B. Smith, Assistant Attorney General, on brief), for appellee.

Opinion

**DUFF, J.**—Alan Douglas Fuller was convicted by a jury of abduction, robbery, and unauthorized use of a motor vehicle. In this appeal, he contends: (1) that the trial court erred in not granting a new trial because of prejudice he sustained when the unimpaneled jury pool observed him being escorted to the courtroom by sheriff's deputies; and (2) that he was entitled to have a venire of twenty jurors impaneled, not eighteen, despite the Commonwealth's waiver of two peremptory challenges. Because we find, under the facts in the record, that the trial jury was improperly impaneled, we reverse the convictions and remand for a new trial.

Fuller's trial for abduction, robbery and unauthorized use of a motor vehicle commenced on April 11, 1990. Prior to the jury pool being moved into the assigned courtroom, Fuller was brought from the lockup to the courtroom. He was neither handcuffed nor wearing prison clothes, but he was accompanied by sheriff's deputies. He was escorted by the deputies past an open door leading to the courtroom where the jury pool was seated.

Approximately one week earlier, on April 3, 1990, Fuller had been tried and acquitted by a jury of unrelated, but similar, charges of abduction and robbery. A number of the members of that jury were still on duty and seated with the jury pool on April 11, 1990. Fuller contends that, upon seeing him pass the open door in the custody of the deputies, several of the jurors who had served on his April 3 jury reacted with surprise that he was on trial again. David R. Anderson, a juror who had served as the jury foreman for the April 3 trial, testified at a hearing on a post-conviction motion that he "compared notes" with the person sitting next to him. By that, he meant, "we looked at each other and discussed the fact that here is the same person that we just tried

and we were both surprised." He could not state whether other members of the jury pool observed the startled glances that he and the other juror, who sat beside him, exchanged.

It was represented on brief and at oral argument that when the case was originally set for trial, appellant's counsel had specifically asked the court, and the court agreed, to have the clerk provide a different pool for each of appellant's two cases, one set for April 3, and one for April 11, 1990, even though both trials would occur in a time span within which the same jury pool would serve. It was at the behest of the Commonwealth's attorney that these cases were set within a week of one another, and the requirement for a different panel was the consideration for this.

Prior to the impaneling of the jurors on April 11, 1990, defense counsel, who also represented Fuller in the earlier trial, noticed a number of the earlier jurors interspersed with the remainder of the jury pool. Fuller's counsel brought this matter to the court's attention in an effort to seat a panel of twenty veniremen, none of whom had served on the April 3 trial.

It became evident that the clerk of the court could not impanel twenty jurors who met this qualification. The clerk advised the court that he could "only come up with eighteen names." The prosecutor then volunteered to waive two of the Commonwealth's peremptory strikes. This offer was rejected by the defense, who contended that under the statute he was entitled to a panel of twenty jurors from which strikes would be taken.[1] Later, it was learned that one of the eighteen jurors impanelled, a Mr. Cooper, had been on the original panel in the earlier trial, but had been stricken. The Commonwealth's attorney at that point offered to waive a third strike, proceed with a panel of seventeen, reserving only one peremptory strike for the Commonwealth. After further discussion between the court and counsel, the court ruled that Mr. Cooper should remain a member of the panel of eighteen, with the Commonwealth being allowed only two peremptory strikes. Defense counsel duly objected to the selection of the jury using this procedure.

---

[1] Code § 19.2-262(2) provides in pertinent part that "[t]welve persons from a panel of twenty shall constitute a jury in a felony case."

We initially address Fuller's contention that he was prejudiced by being observed by the jury pool, which included some, if not all, of the members of the panel that had tried him the week previously. His argument is grounded, in essence, on the claim that his jury was not impartial because some members of the pool appeared visibly startled at seeing him proceeding to trial again. We find no merit to this contention.

■ The mere fact that jurors know a defendant is in custody or see him in handcuffs outside the courtroom does not taint the panel. As the Eighth Circuit stated in *Clark v. Wood*, 823 F.2d 1241, 1245 (8th Cir. 1987), *cert. denied*, 484 U.S. 945 (1987), "it is a normal and regular . . . practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this." In this case, Fuller was not handcuffed or dressed in prison garb. He was only being accompanied by deputies as he passed the open door where the jurors were seated.

The voir dire of the jury panel showed no bias on the part of any juror; none of the jurors had any interest in the outcome of the case; none knew anything about the case; and none were aware of any reason why a fair and impartial verdict could not be rendered. The defendant's argument is that startled glances among several of the potential jurors constitute a showing of prejudice and impartiality. We disagree and note that none of these jurors, except Mr. Cooper, were part of the venire subsequently impaneled. Such evidence falls short of establishing reasonable doubt regarding the jurors' impartiality.

Fuller next contends that he was prejudiced by not having a panel of twenty jurors impaneled, as mandated by Code § 19.2-262. He argues that the word "shall" in the statute is mandatory, and the fact that the Commonwealth waived two of its peremptory challenges and offered to waive a third does not overcome the mandate of the statute. He further argues that he was prejudiced by loss of the possibility of having two additional impartial members on the panel who may not have been struck by the Commonwealth.

Fuller further argues that he was prejudiced by the court's action in seating Mr. Cooper, who also had been impaneled on the April 3 jury. Cooper participated in the voir dire of the previous panel and presumably recognized the similarity between the

charges in the two cases. Cooper's presence on the panel potentially could have caused Fuller to use one of his strikes in order to remove Mr. Cooper from the panel. The Commonwealth, however, struck Mr. Cooper. We find, nonetheless, that Fuller was prejudiced by Mr. Cooper's presence since he was denied the possibility of having another impartial person sit who had no knowledge of the prior trial; that additional juror may not have been struck by the Commonwealth if a full panel of twenty veniremen had been provided.

The Commonwealth concedes that having a panel of eighteen jurors was an "irregularity," but contends that it was not intentional and thus was cured by Code § 8.01-352(B).[2] *See O'Dell v. Commonwealth*, 234 Va. 672, 364 S.E.2d 491, *cert. denied*, 488 U.S. 871 (1988). We disagree. The fact that there were not twenty jurors present who were not involved in the April 3 trial may have been unintentional, but the seating of Mr. Cooper was intentional. While there is no showing in the record that Cooper was even aware of the results of the earlier trial, he surely knew the nature of the charges and knew that they were similar to those on trial April 11. In requiring Cooper to sit as a venireman under these circumstances, the court erred to Fuller's prejudice.

██ We do not intend to prohibit the practice in many parts of the Commonwealth of allowing a waiver of one or more peremptory strikes upon agreement by both sides. Under appropriate circumstances, a waiver of peremptory strikes by one or both parties is helpful and useful to the alleviation of an overcrowded docket. However, where a defendant, as here, has alerted the court to the

---

[2] Code § 8.01-352 provides: OBJECTIONS TO IRREGULARITIES IN JURY LISTS OR FOR LEGAL DISABILITY; EFFECT THEREOF.

A. Prior to the jury being sworn, the following objections may be made without leave of court: (i) an objection specifically pointing out the irregularity in any list or lists of jurors made by the clerk from names drawn from the jury box, or in the drawing, summoning, returning or impaneling of jurors or in copying or signing or failing to sign the list, and (ii) an objection to any juror on account of any legal disability; after the jury is sworn such objection shall be made only with leave of court.

B. Unless objection to such irregularity or disability is made pursuant to subsection A herein and unless it appears that the irregularity was intentional or that the irregularity or disability be such as to probably cause injustice in a criminal case to the Commonwealth or to the accused and in a civil case to the party making the objection, then such irregularity or disability shall not be cause for summoning a new panel or juror or for setting aside a verdict or granting a new trial.

existence of a potential problem and elects to stand on the statutory mandate of a panel of twenty jurors, we hold that he is entitled to a full panel of impartial jurors and may not be required to accept a lesser number simply because the Commonwealth agrees to waive one or more of its peremptory strikes.

Accordingly, the convictions appealed from are reversed and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Baker, J., and Elder, J., concurred.